Good morning. My name is Julie Farr. I represent the appellant Michelle Clark. Can I reserve three minutes for rebuttal, please? Excuse me? I'm asking to reserve three minutes for rebuttal. Yes. Thank you. This case involves the interpretation of a short-term disability policy. Michelle Clark was an employee of Janssen Pharmaceuticals and was covered under a short-term disability policy issued by related entities that we refer to collectively as the Janssen Defendants. On the same day she applied for short-term disability benefits, Michelle Clark's employment was terminated by Janssen. Do I understand correctly that you do not claim that it was a violation of contract, a law for them to fire her? No. We're not claiming it was a violation of the law to fire her. The claim relates to whether she's entitled to benefits under the short-term disability plan and tangentially the long-term disability plan, although that's dependent on the short-term, so the long-term disability plan policy is really not an issue here. Just on that same vein, you're not arguing that she was fired because she sought the benefits either? I think that's irrelevant. I don't know why she was fired, to be perfectly honest with you. So you're not arguing that she was fired because she sought the benefits? No. Okay. No. The fundamental error here was that this case was dismissed by the district court based on a single-sentence argument made in a reply brief to which Ms. Clark never had the opportunity to respond. That is contrary to the established law, that arguments made for the first time in a reply brief will not be considered by the court because of the reason the opponent has no opportunity to respond. And it was a single sentence. That's also contrary to the rule that courts will not consider arguments made in a perfunctory manner without any developed argument. The district court also failed to construe the facts in the light most favorable to Ms. Clark as it should on a motion to dismiss. And under Maine law, it should also construe ambiguous language in a plan to provide coverage, construe it against the drafter and in favor of coverage. Counsel, is it your understanding, and perhaps your opponents will address this, that there is now an acknowledgment that by filing, by making her request for the short-term disability benefit on the last day of her employment, as you would characterize it, that there was still coverage at the time that she applied for those benefits? Is there now, I think earlier in the proceedings, there was an argument being made by your opponents that that was not a timely request. My sense is that's no longer in dispute. What is your understanding of that issue? Not having represented Ms. Clark in the district court, I can only read from the briefs. And it seems to me that when Janssen filed its motion to dismiss, its arguments were inartfully drafted, and it appeared that they were making the argument Ms. Clark hadn't applied for benefits while she was still covered. And that is the argument to which Ms. Clark's then counsel responded. In its reply brief, however, Janssen claimed that benefits would have ended, not just coverage, but benefits would have ended at the time of her termination, which is a completely different argument. I mean, the plan language distinguishes between coverage period and benefits and gives two different definitions as to when benefits end versus when coverage ends. And it's that distinction in the language that we feel leads to the conclusion that benefits do not end on the termination of employment when it's the employee who is involuntarily terminated as opposed to when the employee voluntarily terminates. Let me ask you about an argument that you made in response to the claim that her employment ended prior to any eligibility to receive benefits. And your argument was that the requirement to, in effect, to be out for seven days as a result of the claim disability is, in fact, with the benefit payable if the seven-day condition is satisfied, reverting back to day one. Your argument is that that is simply a provision that determines the timing of the payment of benefits rather than eligibility for benefits. My problem with your argument is this, and this is what I'd like you to address. If her employment ends prior to the expiration of the seventh day, and the ending of the employment does not represent any contractual or legal impropriety on the part of the employer, which we have to assume here, then she never gets to the point at which any benefit could be payable because the seven-day condition isn't satisfied. So why isn't it necessarily the case that the seven-day condition not only determines the time for payment, but also determines eligibility? Because if she does not retain employment through the seventh day, she never reaches the point of eligibility. Our argument is that that is a factual issue. It's not something that could be decided by the district court simply by reading the policy language. Why not? For example, Ms. Clark could have been, not that she has to be absent from work, it's that she has to be unable to work her regularly scheduled hours. And for all we know, she's been unable to work her regularly scheduled hours for some time. The policy language also... But that's pure speculation. You can't base a benefit claim on that. Right. But what I'm saying is the policy language in and of itself isn't a basis for dismissal. There should have been some factual development. Isn't it seven days from application? It doesn't say that. So at any point, when you apply, at any point, if you can show in the past, at any point ever, there was seven days out even if you didn't apply? You can now retroactively say there was seven days? I think it could look forward seven days. It just says that you will become eligible for payment once you've been, your first day that you've been absent following seven days that you've been unable to work your regularly scheduled hours. Not that you've been absent, but that you've been unable to work your regularly scheduled hours. The plan also defines employment to include vacation time. Ms. Clark could prove that she's unable to work, even though this vacation time, you know, she's out of work. She still could be unable to work her regularly scheduled hours, even if she's put on involuntary vacation leave by her termination. What would be the fact question with respect to the meaning of the agreement? I understand what you say that there are factual disputes about when she was absent or not, but with respect to Justice Sotomayor's question about what the contract means, what is the fact question? The fact question is whether she was unable to work her regularly scheduled hours for seven days at any point, either before or after her termination. Counsel, what is the significance of the introductory language if regroup approves your disability? What significance do you attach to that language? I mean, arguably it suggests that they have now acknowledged, approved the disability claim, and it's a question of then when do you get it. Is that how you read the significance of that language? Yes, that's why we make the argument that that has to do with timing rather than eligibility for benefits, because it contemplates regroup could approve the disability before the seven days is up, but you're not eligible for payment until after the seven days. I think that prefacing language governs timing of payment, not whether benefits are going to be paid. Thank you. No, it's not worth asking. Okay, thanks. Thank you. If I have, do I have more time? You do not have more time. You've reserved three minutes for rebuttal, so you can come back for that. I can't tell from this, so I apologize. Good morning, Your Honor. May I please escort? My name is David Henderson. I'm here with Rebecca Hicks-Gallup. We represent three of the four appellees. Janssen Pharmaceuticals, one of our clients, was the employer of Ms. Clark and the entity that paid for and provided her with short-term disability benefits. Johnson & Johnson is just the parent company of Janssen, and Reed Group is merely a third-party administrator of the STD plan, not an insurer. We're asking the Court to affirm the District Court's dismissal of all of the claims against my three clients, but particularly the breach of contract claim, which I understand is the only claim that Ms. Clark still is pursuing. Ms. Clark's breach of contract claim, based on STD benefits, was properly dismissed because it doesn't meet the 12B6 standard that this Court is very familiar with, I know, in the Bell Atlantic v. Twomley and the Ashcroft v. Iqbal cases, and that's because it does not plead facts sufficient to show that there is facial plausibility to this alleged entitlement to relief. Under the Twomley case, Rule 8A2 requires a plaintiff's plain statement to possess enough heft to show that the factual allegations take the alleged entitlement to relief into the realm of plausibility. They don't have to show probability, but they do have to show plausibility. In this case, most of the heft in the allegations is supplied by the 121 pages of the STD and LTD plans that are incorporated and merged into the complaint. In other words, those documents are part of Ms. Clark's own pleadings, and they show in two ways, not just one way that Ms. Clark has talked about, but they show in two ways that she could not possibly recover, and that's because it's undisputed that Janssen terminated her employment on January 29, 2011. It's undisputed. She made her first and only application for any relevant STD benefits on that very same day, and the plan says two things that are very, very clear. One, this Court has already asked questions of Ms. Clark's counsel about, and that's the STD benefits begin on the first full day of absence due to a disability, if you're unable to work according to your regularly scheduled hours for more than seven consecutive days. But the other one, which is very clear, and which Ms. Clark does not acknowledge, and which is shown on page 85 of the appendix, is that even if the employee is receiving severance pay, any benefits under either the STD or the LTD plan end on the date employment ends, and there's no question that her employment ended the same day she applied. So that means two things. One, Ms. Clark's entitlement to STD benefits never began because there was never a seven-day, she doesn't allege, which is what the district court points out on the last page of its opinion, she does not allege that there was a seven-day period of her employment when she could not work due to her disability, and she didn't ask to amend the complaint to say that. Counsel, I want to be sure I understand your argument. I think it relates to the question that I asked opposing counsel. I gather your position is that she did not make a timely claim for STD benefits. Is that correct? That at the time she made the claim, her employment had terminated, and hence coverage was no longer available to her. Is that your argument? Your Honor, that's not exactly right. Okay. If we were proving the facts, that is one of the things we would try to show. But, again, this is 12b-6. We're looking only at her allegations and not adding additional facts. So all we were assuming for purposes of our 12b-6 argument, even though we would argue more if this case went further, all we're assuming for 12b-6 is that it was the very same day. Sometime on the same day. Okay. Now what is the significance of that, that it's the very same day? What is the legal significance of that in terms of the ---- It goes to the second point, Your Honor. The first point is, if I may, she could not claim benefits, or her benefits never started because she didn't satisfy the seven-day provision. But to Your Honor's point, even if the benefits arguably had started in some way, the plan says very clearly that any arguable entitlement that she had to benefits, not just coverage, but to benefits, end on the day of her termination of employment. But isn't the provision for that, doesn't that refer to you, i.e., the employee terminating your employment? It does not, Your Honor. That's the argument that counsel makes, whether it's in the active voice or the passive voice, but on page 85 of the appendix, I'm sorry, and this is the quote, any benefits under the plans will end on the date employment ends. Was there any prefatory language to that? There is. I believe it says even if the individual is receiving separation pay. And as you may recall, that ---- There's no prefatory language that refers to you ending. No, Your Honor. That's correct. I just want to understand the arguments that I get at what you were saying to Judge Lopez. Your position is if she sought disability benefits four days before she was terminated, she still loses. Yes. Because she can't satisfy the seven-day rule. That's right. She would not satisfy the seven days and also any arguable claim would end on the date employment ends. In theory, if it was eight days before, your argument would be she could satisfy the seven-day rule, but she'd get effectively one day of benefits because of the separate provision. That's correct. Okay. And then because she's now terminated on the day she applied, she neither can satisfy the seven-day rule. But even if somehow she could, the separate provision kicks in, and it just so happens that the termination kicks in the very moment she's eligible. That's right. Okay. Exactly right. There's nothing ambiguous about that. Counsel, it seems to me a very odd concept of benefit. I mean, I think of disability benefits, and maybe this is a mistake, but I think of disability benefits as something you get when you can't work, when you're not employed. I mean, the notion that your benefits lapse the moment you're no longer employed seems exactly contrary to the purpose of a short-term disability benefit. I mean, it's designed to offer you support during a period when you cannot work. Am I wrong in that understanding? Your Honor, I think that what goes to the fact is why ERISA does not cover this plan, and that was addressed in the district court papers that my clients filed. They're part of the appendix. But basically this is considered a payroll practice. The ST benefits are payroll practices, like paying salary. I'm sorry, paying for what? Paying salary. They're paid out of the general assets of the company. The employee does not pay for them. The terms are explicitly defined. And for an at-will employee, you can terminate the employment at any time, which means salary terminates at that point. And by the same token, the other payroll practices, these ST benefits would also be terminated. Now, if you did it for some unlawful reason, which is not alleged here, that's a different issue. We're not discussing that. But just so I understand how this would operate, imagine a person is eligible for STT benefits under this plan. If they are on short-term disability, just explain to me how under the plan they're getting paid the benefits? They get paid a percentage of their salary continues, and the amount of the percentage. Because they're employed while they're on short-term disability? Yes, they're still employees. They're employees. But they wouldn't be entitled to pay absent the short-term disability benefit? If they're still employees, wouldn't they be just getting their salary? If they remained employees and did not go on short-term disability, there would be issues about them not being able to work. If I understand what you were saying to Judge Lopez, the way the contract works, you would want the short-term disability. You would get the benefit if you were not employed. Right. But then you also say if you're not employed, you can't get the benefit. No, you want the short-term disability benefits because you want to keep your employment. Why do you need them if you're still employed? Wouldn't you be getting paid? Well, you wouldn't have any way of remaining employed if you could no longer perform the essential functions. You're saying that if you don't apply for disability and qualify and you don't show up for work, you're going to be fired for not showing up for work. Exactly. So what happens is a 26-week limit on how long you can get these benefits. What is the expectation? You say you're still employed during the period that you're getting those benefits. Is the expectation that at the end of those 26 weeks you're in a position to come back to work? It's not an expectation, but if you are available to come back to work, you're expected to come back to work. And you're entitled to come back to work. That's correct. And if you're not, well, entitled, consistent with the at-will theory of employment. But at the end of the 26 weeks, if you're not able to come back to work, that's where you make a separate application to go under the LTD program, which is an ERISA program. Thank you. Thank you, Your Honor. May it please the Court. My name is Madison Hunneborn and I represent Prudential Insurance Company in this case. While plaintiff's counsel, appellant's counsel, has indicated that questions related to long-term disability, I think she said, are, quote, not at issue. She continues to bring claims against my client, including this appeal. We believe the district court correctly dismissed Prudential on the claims against Prudential in this case. Much of your conversation with co-defendant's counsel focused largely on the STD program. Prudential, in this case, ensures the long-term disability program, which to the panel's questions goes specifically what happens after 26 weeks. As a prerequisite, though, in order to receive those benefits under the LTD plan, the plaintiff needed to demonstrate here and plead that she had received STD benefits for those 26 weeks. The contract with Prudential is governed by ERISA and is very clear. It specifically says that a participant is only disabled under that plan if the participant receives 26 weeks of continuous payments under any short-term disability plan sponsored by the contract holder, which in this case would be Janssen Pharmaceuticals and Johnson & Johnson. In this case, it was clear the plaintiff did not plead and could not plead that she met that requirement and therefore she was not eligible for LTD benefits pursuant to the terms of the LTD plan and Prudential denied her claim for that reason. The lower court recognized that she could not state a claim against Prudential because she had not received those benefits and therefore dismissed pursuant to 12b-6 Prudential under the terms of that plan, recognizing there was no claim she could state under ERISA for those benefits. As such, we believe the contract language is clear and the district court correctly dismissed Prudential under this case and we ask the court to uphold that argument here at this juncture as well. Simply stated, the plaintiff can't pursue those benefits against Prue and they should be dismissed from the case. Thank you. Can I just understand and make sure I get that? Is that, suppose there was a wrongful denial of the STD? Is your position she still can't get the LTD? That would be our position at this point in time, yes, Your Honor. That the case with the contract is clear. She did not receive it at the point in time that she was covered under the plan and therefore she's not eligible for the LTD. And what happens, in your view, under the contract if it turns out there was a wrongful denial of the STD? Can she never get LTD benefits then? We didn't decide that question. Prudential, and as you know, under ERISA there's an administrative process. So Prudential has not considered that specific question in the administrative process. What would likely be to occur is that they would interpret the contract and plan pursuant to the provisions there, which there are several arguments that would suggest she's no longer eligible under different reasons for that. But it is possible that on a remand the plan would reconsider that issue depending on the circumstances surrounding the denial. Thank you. Thank you. None of those arguments as to the long-term disability plan were decided by the district judge because everybody agreed she's not eligible for long-term disability unless she first gets the 26 weeks of short-term disability. I think if she wins this appeal, long-term disability is back in play. As to the language cited by counsel at page 85 of the appendix, pages 47 to 48 define when benefits terminate. It says when you retire, die, or leave employment for any reason. And as Justice Souter pointed out, the U has to refer to the employee. So if the employee terminates the employment voluntarily, benefits would cease. If the employee is terminated involuntarily, that language doesn't apply. And that is buttressed by the fact that the plan later allows for a reduction of short-term disability benefits if the employee begins receiving unemployment benefits. That provision would have no meaning if the employee lost benefits for any termination, such as when the employer terminates her. She wouldn't be eligible for unemployment benefits if she left voluntarily. Hence, short-term disability stopping when she left voluntarily makes sense. She would be eligible for unemployment benefits, so if the employer terminated her involuntarily, except for misconduct, and might be entitled to short-term disability offset by her unemployment benefits. And as Justice Lopez pointed out, if an employer can terminate an employee and cause short-term disability benefits to stop, that's contrary to the whole purpose of the short-term disability plan. It makes the promises in it illusory. Because an employee can apply for short-term disability, be out a few days, and the employer can terminate their employment. And that is completely contrary to the purpose of a short-term disability plan to provide the employee benefits when she's unable to work. And, excuse me. Janssen was responsible for framing the arguments in the motion to dismiss. It never made the arguments that it's making here today in its motion to dismiss. It never argued the seven-day provision barred coverage. Ms. Clark never got the opportunity to respond to that because it was raised in a single sentence in a reply brief. Well, I don't hear them pushing today that waiver argument that you're worried about. So I don't think you have to worry about it. I'm making the argument that they have waived that argument in the district court. They didn't raise it. Therefore, we had no opportunity to respond to it. Therefore, it was error for the district court to rule on that basis. My understanding was that the denial letter referenced the seven days? There were three denial letters. Did a denial letter reference the seven-day period? The third one did, yes. The first two referred to a denial of short-term disability leave under some other unknown policy. Thank you. Thank you.